Dear Mr. Brown:
This is in response to a request for an opinion from Edgar H. Crist, Commissioner of Finance, on the following question:
 "A recent enactment by the Missouri General Assembly, Senate Committee Substitute for House Committee Substitute for House Bills 896 and 897 establishes the mechanics whereby unclaimed deposits located in banks, credit unions and savings and loan associations will escheat to the state. That law requires that each depositary publish notice of unclaimed deposits in the newspaper and also mail notice of the deposits to the owners thereof. With respect to the latter requirement, the law states, at Section 362.395.2.:
 `The expense of the publication shall be paid by the company, and, on or before the first day of August in that year, the company shall mail, postage prepaid, to each person authorized to receive the unclaimed deposit, . . . a statement showing the amount to which the person in entitled. . . .'
 "It is clear from the context that the first day of August referred to is August 1, 1978. However, the statute does not take effect until August 13, 1978. Does the fact that there is a gap between the action which is prescribed by the statute and the effective date of the statute require the conclusion that the statute, or any part thereof, is invalid?"
The legislation to which you refer is Senate Committee Substitute for House Committee Substitute for House Bill Nos. 896 897, Second Regular Session, 79th General Assembly, which was approved by the Governor and is effective August 13, 1978. This act relates to escheats of certain unclaimed property.
Subsection 1 of Section 362.390 of the act provides:
 "In the month of September in every seventh year, and beginning in September, 1978, and on or before the tenth day thereof, every national bank or trust company, every federal and state credit union, every federal and state savings and loan association, and every state bank or trust company shall make a written report, in the case of a bank or trust company to the director of the division of finance, in the case of a savings and loan to the director of the division of savings and loan supervision, and in the case of a credit union to the director of the division of credit unions, verified by the oaths of the president or vice president and cashier or assistant cashier or secretary or assistant secretary, containing a true and accurate statement of all deposits made with the company, except any deposits held in a fiduciary capacity, and all dividends declared and interest accrued upon any of its deposits or other evidences of indebtedness, which on the first day of August preceding the report amounted to fifty dollars or over and had remained unclaimed by any person or persons authorized to receive the same for a period of seven years."
Subsection 1 of Section 362.395 of the act provides for publication of the required report for two successive weeks in a qualified newspaper and filing with the director of proof by affidavit of publication by the first of October thereafter.
Subsection 2 of Section 362.395 of the Act provides:
 "The expense of the publication shall be paid by the company, and, on or before the first day of August in that year, the company shall mail, postage prepaid, to each person authorized to receive the unclaimed deposit, dividend or interest, at his last known place of residence or post office address, a statement showing the amount to which the person is entitled and requesting written acknowledgment thereof, together with a warning that failure to acknowledge will result in the state making claim and taking possession of such deposit, dividend, and interest, subject to the claims, supported by proof, of the apparent owner. The company may reimburse itself for its expenses by deducting the amount thereof from the sums due the person or persons who shall not have made written acknowledgment before the filing of the required reports with the director, so that such expenses are uniformly deducted from sums not acknowledged." (emphasis added)
Subsection 3 of Section 362.395 provides that for the purposes of the act, one hundred eighty days after the mailing of the statement the funds are first presumed abandoned and within thirty days after the funds are first presumed abandoned each company shall transfer such abandoned funds to the state treasurer and refile the written reports with the proper division director deducting expenses and deleting such funds that were acknowledged. Subsection 4 of Section 362.395 provides that within thirty days of the receipt of such abandoned funds the state treasurer will notify the apparent owner of the abandoned funds that the State of Missouri has claimed the abandoned funds along with an outline of the apparent owners rights.
Subsection 3 of Section 362.396 of the Act provides that claims may be filed any time within twenty-one years after the date on which such abandoned funds were first presumed abandoned pursuant to the terms of the act.
It thus appears from this legislation that the General Assembly has clearly expressed the intent that the reports required under subsection 1 of Section 362.390 would be made in September, 1978, and on or before the tenth day thereof and in every seventh year thereafter. Clearly since the act is not effective until August 13th, the requirement of subsection 2 of Section 362.395 that the company mail statements to apparent owners on or before the first day of August cannot be strictly complied with for the year 1978. Clearly also the actions required to be taken after such date, except for the reports required under subsection 1 of Section 362.390 and the filing of the affidavit of publication under subsection 1 of Section 362.395, are to be taken within the specified periods of time relating back to the initial date on which the funds are presumed to be abandoned.
Your question is what effect the apparent inadvertent use of the August 1 date has on the act and the obvious legislative intent that the reports commence in September of 1978. It is axiomatic that the primary purpose of statutory construction is to determine legislative intent. Here the legislative intent is clear and the only question that remains is what procedures should be followed in order to achieve the legislative purpose.
Clearly the act is not invalid because of the expression of the August 1 date and we see no reason to delay the implementation of the act contrary to the clear expression of legislative intent.
The argument seems to exist that the reference to the August 1 date is mandatory and therefore, the legislative intent cannot be carried out. However, in this respect we note the holding of the St. Louis Court of Appeals in Elliott v. Hogan, 315 S.W.2d 840
(1958) at l.c. 846:
 ". . . The terms `mandatory' and `directory' are convenient only for the purpose of distinguishing one class of irregularities from another, for, strictly speaking, all laws are mandatory in the sense that they are enacted to be observed and obeyed. However, adopting, for convenience, the nomenclature heretofore commonly used, it is true that in many decisions involving our election laws a distinction has been drawn between the result which followed from the violation of a statute held to be mandatory and the consequence of a breach of a statute said to be merely directory in nature. (citations omitted)
 "But whether a statute is mandatory or merely directory is not always clear. It has been said that if the statute in question prescribes the result to follow from its violation, the courts will consider the provision a mandatory requirement, and enforce it. . . ."
In the instant case it is clear that the object of the bill is to provide a method of procedure for the escheat of certain funds to the State of Missouri. It is hardly conceivable that the statutory reference to the August 1 date could be held mandatory so as to defeat such procedure. If such were true voluntary noncompliance by such companies with respect to such date would adversely affect the State of Missouri. However, we believe that while the statute is mandatory insofar as it concerns the obligation of such companies under the act it is not mandatory in the sense that a breach thereof on the part of such companies would adversely affect the right of the State to take such action as is necessary for compliance. We believe that a court of this state would fill in such a void in statutory language with respect to such date in order to give effect to the legislative intent.
We therefore are of the view that the procedure required to be followed by such companies for the mailing of such notice should be followed promptly after this act becomes effective and completed as expeditiously as possible. After this year such companies are expected to give the required notice on or before the first day of August.
CONCLUSION
It is the opinion of this office that notices which are required to be mailed by financial institutions under S.C.S.H. C.S.H.B. 896 897, Second Regular Session, 79th General Assembly, effective August 13, 1978, relating to unclaimed property, should be mailed promptly after August 13, 1978, and, thereafter, on or before the first day of August as provided in such act.
The foregoing opinion which I hereby approve was prepared by my assistants, John C. Klaffenbach and Terry Allen.
Very truly yours,
 JOHN ASHCROFT Attorney General